## No. 6914.

### STATE EX REL. E. RABASSE VS. POLICE JURY OF TERREBONNE PARISH.

Where an act of the Legislature authorizes a parish to issue its bonds for a certain purpose, in such form and denomination as the police jury of the parish shall prescribe, the police jury must specially authorize the issue of the bonds, and the bonds must be signed by the persons designated by the Legislature; and in default of this action of the police jury and this signature of the bonds, all bonds issued under color of said legislative act are invalid.

When a law directs that certain bonds of a parish shall be signed by a majority of the members of its police jury, it means a majority of the members designated by the jury. It does not mean any majority of its members, not selected for the purpose by the jury.

APPEAL from the Thirteenth Judicial District Court, parish of Terrebonne. *Beattie, J.*

*Thomas L. Winder* for relator and appellant.

*L. F. Suthron* for respondents and appellees.

The opinion of the court was delivered by

MANNING, C. J. The relator is the holder of certain instruments, denominated Bonds of the parish of Terrebonne, amounting to four thousand seven hundred and seventy-five dollars, with interest coupons attached. Having demanded payment of the over-due coupons from the parish Treasurer, and having been refused, he obtained this mandamus to the tax collector of that parish to collect forthwith a tax suffi-

cient to pay the past due interest and that next falling due, and also one tenth of the principal, in accordance with the provisions of the Act of March 23, 1874, and of an ordinance of the police jury of May 6, 1876. He prayed further that the police jury be commanded to enforce that ordinance, which he alleges is amendatory of one of July 31, 1874 and another of March 9, 1875.

The tax collector and the police jury answer, that the proceeding by mandamus is not permissible for the purpose of the relator because the power conferred upon them by the Act of the General Assembly is to be exercised only at their discretion, and that they have not yet issued the bonds provided for in the Act—that the bonds sued on are null and void and are not valid obligations of the parish for these reasons; 1. They were not issued by authority of the police jury and a commissioner, 2. No ordinance was passed by the jury authorizing their issuance, nor prescribing the quantity of them or fixing their denomination, nor prescribing the rate of taxation for their redemption and the payment of interest, 3. there was no ordinance prescribing the form of the bonds, nor when they should mature.

There was judgment for the defendant below and the relator appeals.

An act was passed by the legislature creating a board of commissioners to examine and ascertain the valid outstanding indebtedness of the parish of Terrebonne, and authorizing the police jury of that parish to issue bonds to take up and fund the same. Acts 1874, p. 124. The commissioners are named in the act, and full power is conferred upon them to determine upon the validity of all outstanding claims against the parish, and to call on holders for their presentation. It is then provided that the police jury, in conjunction with one commissioner, is empowered to issue bonds of the parish not exceeding twenty thousand dollars, interest to be paid semi-annually, for the sole purpose of taking up this debt. Directions are given that these bonds must be signed by a majority of the police jurors and one commissioner, and their denomination is fixed. The police jury is required to levy a tax sufficient to redeem one tenth of the bonds annually, and the yearly interest, and the ordinance of that body, passed for that purpose, is to remain in force until the redemption of all the bonds and the payment of all the interest. The closing proviso of the act is, that it is not to be so construed as to deprive courts of the power of adjudicating upon any claim which may be rejected by the commissioners.

On the first of May following the passage of this Act the police jury passed a resolution that a committee of two be appointed to obtain blank bonds for the purpose of bonding the parish debt under it, and later $250 was appropriated to enable this committee to buy the blanks. On July 31, 1874 that body resolved there should be levied a tax of $665

to pay the semi-annual interest accruing on the bonds *which have been issued* under the act of the legislature. No ordinance had been passed directing the issuance of the bonds, but only resolutions providing ways and means for getting the blanks which would be needed when the bonds were directed to be issued.

On March 9, 1875 the jury resolved that a tax of one mill be levied for the purpose of meeting the interest, and redeeming one tenth of the principal annually of the parish bonds, and on May 6, 1876 an ordinance was adopted, amendatory of this resolution, authorizing the levy of a tax of one mill on the dollar upon all taxable property to redeem annually one tenth of the bonds issued under the Act of the legislature and a tax of one and a half mills to pay the interest annually accruing.

The commissioners named in the Act met on June 22 1874, and elected one of their number to sign the bonds issued under its provisions. They had formally organized in April, and had published a notification to all holders of parish warrants, scrip, or other claims to present them to the board for inspection. They received the scrip, issued bonds to the amount of over fifteen thousand dollars, and destroyed the scrip. The relator's bonds are a part of those thus issued.

They were issued illegally. At no time did the police jury pass an ordinance directing, authorizing, or empowering the issuing of any bonds. The Act of March 23, 1874 empowered the police jury to issue bonds of the parish, and directed that a majority of the jurors and a commissioner should sign them, and required the jury to levy a tax to pay them and the annual interest. The jury levied the tax, but did not authorize the bonds. It did not designate which of them should sign the bonds. The police jury is a political entity, and acts as one being. When written instruments are to be signed by it, the president or some members selected by it, act for the body. The legislature had required that a majority should sign these bonds. A majority was three. The jury should have designated the three. To hold that any three members of a police jury can bind the parish by signing bonds in its name would be dangerous, to say nothing of its being illegal.

It is perfectly manifest that the board of commissioners usurped the functions of the police jury. The bonds are dated July 1. 1874 and are all payable ten years after date. The attempt to prove a meeting of the police jury on that day was abortive. Marie, the commissioner who signed the bonds, knew of no meeting on that day. Kennedy, a member of the jury, says there was, and he attended it on a summons from the president, and then recites what took place touching the bonds with a minute circumstantiality that exhibits an extraordinary memory for details. He was testifying more than three years after the meeting. We do not believe him. The clerk of the police jury is not certain

there was a meeting. Yet his records contain no account of it. He does not even remember whether he was at it or not, and on cross-examination says, he supposes the police jury was in session because a majority of them were there. That was the day they were signing the bonds. Condon, Keys, and Cage were the three that signed the bonds, and of course were there, but there is nothing to indicate Kennedy's presence, who remembered every thing that was proposed and passed while the clerk says that he remembers no motions or resolutions, and certainly did not record any. The president of the jury thinks there was a meeting of that body on 1st. July, but says a record was kept if there was a meeting—that he always appointed a deputy or pro tem. clerk when that officer was absent, and he required him to note the proceedings in the same way the clerk did—and that if there was a meeting on that day, the minutes will shew it. The minutes contain no mention of it.

The commissioners appear to have read the act as conferring upon them the power of bonding what is called the indebtedness of the parish. The sequence of events shews this. The police jury obtained the blanks, and did nothing else until after the bonds were issued. On June 22d the commissioners selected one of their number to sign the bonds. On July 1st. he did sign them and three members of the jury signed also. On July 31st the jury levied a tax to pay the interest accruing upon bonds already issued, as the resolution has it, and although minutes of every step taken by the jury in its frequent meetings about that time relative to these bonds were preserved, nowhere do we find any trace of an ordinance authorizing and directing the issuance of any bonds, but on the contrary the phraseology of all the resolutions shews that the members supposed that nothing was to be done but buy blanks for signature, and after they were signed and issued, to levy a tax to pay the interest and one tenth of the principal. The bonds shew this. They were all payable at one time viz ten years after date. The jury were required to levy a tax to pay one tenth each year, and they did it, and if they had had any thing to do with ordering the bonds, they would have made one tenth payable at the end of each of the ten years.

The duty of the commissioners under the legislative Act was confined to the examination of claims and determination of their validity. They had nothing else to do except select one of their number to sign the bonds. But they appear to have received scrip, warrants, etc. and of their own motion exchanged bonds for them, which had been signed ready for their use. They did more. They destroyed the scrip. They had no right to destroy it. They should have examined it, and have passed upon its validity, and laid their report before the police jury who alone had authority to exchange bonds for it.

We may remark here that it is unnecessary to say in this case

State ex rel. Rabasse vs. Police Jury of Terrebonne Parish.

whether the legislature can confer upon such a board the power so to 'determine the validity' of alleged claims against a parish as to create a binding and unassailable obligation upon it. Judicial power can be exercised only by the courts mentioned in the constituton. It is true the Act provides that any person whose claim is rejected may invoke the adjudication of a court. But the police jury and the tax payers have rights also, and it would appear that where a claim was approved, it was intended that the determination of the board of commissioners was in that case to be final. A tribunal that is clothed with such extraordinary power as to conclude one party absolutely by its decision, while the other is alone left free to demand a judicial investigation, may well provoke scrutiny of its origin, and the source of its authority.

Several decisions of the Supreme Court of the United States are cited by relator's counsel, and among them is Commissioners of Knox Co. vs. Aspinwall, 21 Howard, 540. In these cases, the bonds were issued by the proper authority, and in accordance with the act of the legislature. We have seen the bonds of the relator were issued without the authorization of the police jury, the body specially designated by the legislature to issue them. Lisso v. Parish of Red River, 29 Annual, 590.

It is unnecessary to consider the bills of exception to the admission or rejection of testimony, as without the testimony objected to by either side, the case is clearly with the respondent.

Judgment affirmed.